### BONAM v. SOUTHERN MENHADEN CORPORATION.

(District Court, S. D. Florida. May 16, 1922.)

No. 1505.

**1. Seamen ⟨key⟩29(5)—Breaking of purse rope held not shown to be due to unseaworthiness.**

In action by seaman for injuries from parting of purse rope, three counts alleging, respectively, "unseaworthy equipment," in that a winch should have been provided for hauling the rope, furnishing "a purse rope unseaworthy for the work required, in that the same was unsound, weak, and unfit for the strain upon it," and furnishing "an unseaworthy purse rope, in that the same was made of hemp or grass and was not a cable designed and made for pursing, such as is in common use by careful own-

ers of vessels engaged in the character of work" defendant was engaged in, *held* demurrable as not alleging unseaworthiness of the vessel, which was essential to recovery of indemnity for injuries.

**2. Seamen ⊜⟞11—Employer liable for negligent medical attendance only if he knew physician was unskilled.**

An employer *held* not liable to injured seaman for negligence of surgeon provided by the employer unless employer knew the surgeon was unskilled.

**3. Seamen ⊜⟞11—Employer liable for failure to furnish maintenance and cure for injured seaman.**

Where seaman was injured in his employment, his employer would be liable if he neglected and refused to furnish the seaman maintenance and cure.

This was an action on the case for $10,000 damages for injuries to plaintiff while employed by defendant as fisherman upon the high seas, caused by the sudden and unexpected breaking in two, on July 12, 1918, of a "purse rope" or top rope of a seine, while plaintiff with other employés was pulling it in, in the operation of "pursing the fish," so that plaintiff and the others were suddenly caused to fall violently backwards, and plaintiff was trampled on, resulting in injury to his head and a rupture, whereby his earning capacity was reduced and impaired to the extent of four-fifths of what it was prior to his injury.

Count 1 alleged as negligence, that "the defendant negligently furnished unto the plaintiff, to do the work required of him, unseaworthy equipment, in that there was no winch or other machinery provided for the purpose of hauling or pulling the aforesaid purse rope, such as is in common use for such purposes among owners of vessels engaged in like enterprise as defendants."

Count 2, for negligence, alleged that "the defendant negligently furnished onto the plaintiff, to do the work required of him, a purse rope unseaworthy for the work required, in that the same was unsound, weak, and unfit for the strain upon it."

Count 3, for negligence, alleged that "the defendant negligently furnished unto the plaintiff, to do the work required of him, an unseaworthy purse rope, in that the same was made of hemp or grass and was not a cable designed and made for pursing, such as is in common use by careful owners of vessels engaged in the character of work the defendant was then and there engaged in."

Count 4, in addition to alleging the accident and injury, alleged that defendant sent plaintiff to a certain hospital for treatment and provided a physician and surgeon to attend upon him; that to effect a cure of his rupture, an operation was necessary, and was performed by such physician and surgeon, who was negligent "concerning the plaintiff and in and about the said operation, and negligently failed to catch up, attach, bind, or sew together the arching fibers and conjoined tendon of the internal oblique and transversalis muscles to the Poupart ligaments, which was necessary in order to effect a cure of plaintiff's said rupture, and, by reason of such negligence, the plaintiff's rupture was made worse than before said operation."

Count 5, after alleging the accident, injury, and sending to the hospital, where an operation was found necessary, and was performed by the physician and surgeon furnished by defendant continues: "That the defendant was negligent in the selection and furnishing of the physician, in that the defendant furnished a physician and surgeon who was unskilled in the performance of the operation by him performed upon the plaintiff, * * * and was one who had had but small experience in the performance of such operation, * * * and it was known by the defendant, or by reasonable diligence upon the part

of the defendant it could have known, that the said physician and surgeon was unskilled and of small experience in the performance of such operation as was necessary to effect plaintiff's cure and in such operation as was by the physician and surgeon performed upon the plaintiff, and the plaintiff alleges that, by reason of the lack of skill and lack of experience in the physician and surgeon as aforesaid, * * * the arching fibers and conjoined tendon of the internal oblique and transversalis muscles were not properly caught up, attached, bound, or sewed to the Poupart ligaments, and whereby the plaintiff's rupture aforesaid, sustained as aforesaid, was made worse than before said operation."

Marion B. Jennings, of Jacksonville, Fla., for plaintiff.

Marks, Marks & Holt, of Jacksonville, Fla., for defendant.

CALL, District Judge. Demurrer to the first, second, third, and fourth counts is sustained. The demurrer to the fifth and sixth counts is overruled, and defendant shall plead as it may be advised to the fifth and sixth counts on or before the rule day in June next.

[1] In the above case it seems that upon authority of the adjudicated cases it is clear that the plaintiff was a seaman, and his right to recover must be gauged by the maritime, rather than the common, law. Under the maritime law a seaman injured is entitled to recover his wages, his maintenance and cure; that he is entitled to recover indemnity for injuries caused by the unseaworthiness of the vessel.

The first three counts recognize this principle and attempt to base the claim on unseaworthiness, but the facts alleged do not constitute unseaworthiness of the vessel.

[2] The fourth count alleges negligence of the surgeon performing the operation without allegations bringing home to the defendant knowledge that the surgeon was unskilled.

[3] The fifth count does this. The sixth count is predicated upon the neglect and refusal of the defendant to provide maintenance and cure. The demurrer to the fifth and sixth counts will be overruled and sustained to the first, second, third, and fourth counts.